SAYERS v. SCHOOL DISTRICT NO. 1, FRACTIONAL.

SCHOOLS AND SCHOOL DISTRICTS—TORTS—GOVERNMENTAL IMMUNITY —INSURANCE.
    A school district, as an agency of the State, is clothed with the State's immunity from liability for ordinary torts committed in the course of its exercise of the governmental function of conducting recreational activities on school playgrounds, notwithstanding fact that it had purchased a general liability insurance policy.

SOURIS, J., dissenting.

Appeal from Genesee; Baker (John W.), J. Submitted June 6, 1961. (Docket Nos. 8, 9, Calendar Nos. 48,648, 48,649.) Decided March 19, 1962.

Case by Ollie Lee Sayers, by his next friend, Oliver L. Sayers, against School District No. 1, Fractional, Townships of Argentine and Deerfield, Counties of Genesee and Livingston, and against parties doing business as Wolfe Construction Company for personal injuries sustained on school playground dur-

REFERENCES FOR POINTS IN HEADNOTES
47 Am Jur, Schools § 56 et seq.

ing building operations. Similar action by Oliver
L. Sayers for medical expense. Cases consolidated.
Summary judgments for defendant school district.
Plaintiffs appeal. Affirmed.

*Miner & White (Edwin B. White* and *Robert A.*
*McKenney,* of counsel), for plaintiffs.

*Gault, Davison & Bowers (Russell E. Bowers,* of
counsel), for defendant school district.

KAVANAGH, J. These 2 cases, consolidated for
trial and for this appeal, were brought by Oliver L.
Sayers—one in his own right and one as guardian
of his son—for expenses and personal injuries suf-
fered by the son, Ollie Lee Sayers, a pupil of School
District No. 1, who was injured while playing on
the school grounds. The boy suffered injuries as
a result of stepping into a hole created by construc-
tion work. These actions were brought against the
contractors constructing new buildings and against
the school district itself.

Defendant school district raised the affirmative
defense of governmental immunity. Plaintiff re-
plied, admitting defendant school district was in the
exercise of a governmental function, but contending
the school district had waived its immunity by pur-
chasing a policy of general liability insurance.

The lower court granted defendant school dis-
trict's motion for summary judgment saying the ac-
tion was barred by the doctrine of governmental im-
munity and that the purchase of insurance did not
constitute a waiver of this immunity.

We are asked to reverse the trial court by hold-
ing the doctrine of governmental immunity is no
longer available to a school district. To do so we
would have to reverse a number of decisions of our
Court dealing with the doctrine of governmental im-

munity as applied to school districts. Under our decisions the school district as an agency of the State has been clothed with the State's immunity from liability. *Whitehead* v. *Detroit Board of Education,* 139 Mich 490; *Daniels* v. *Board of Education of Grand Rapids,* 191 Mich 339 (LRA 1916F, 468); *Richards* v. *Birmingham School District,* 348 Mich 490.

If we were dealing with the obsolete "king can do no harm" edition of governmental immunity established by the courts, we would not hesitate to strike it down for the reasons sets forth in *Parker* v. *Port Huron Hospital,* 361 Mich 1. However, here we are concerned with the repeal of the doctrine of governmental immunity by the legislature through the enactment of PA 1943, No 237, and its re-establishment by the legislature by PA 1945, No 87,* which this Court has construed as determining the legislative intent to re-establish the doctrine by statute. *Van Antwerp* v. *State,* 334 Mich 593; *McDowell* v. *State Highway Commissioner,* 365 Mich 268.

The only other question raised on appeal is whether the purchase of a general liability policy of insurance by defendant school district constitutes a waiver of the defense of governmental immunity. It is pointed out by appellant that Illinois, in the case of *Thomas* v. *Broadlands Community Consolidated School District,* 348 Ill App 567 (109 NE2d 636) and in *Moore* v. *Moyle,* 405 Ill 555 (92 NE2d 81), has adopted such a rule of law. We find no authority other than the Illinois cases to justify our reversing the Michigan position. We do not feel free to do so in view of the intent of the legislature in re-establishing a defense of governmental immunity in such cases.

---

* See CL 1948, § 691.141 (Stat Ann 1959 Cum Supp § 27.3548 [41]).—REPORTER.

The orders granting the summary judgments in favor of defendant school district are affirmed. Defendant school district shall have costs.

DETHMERS, C. J., and BLACK, J., concurred with KAVANAGH, J.

CARR, J. (*concurring*). In granting the motions of the defendant school district for summary judgments in its favor the trial judge said, in part:

"This court believes that liability should be determined either on a statutory requirement or should be based on the law as established by case decisions of a court of final jurisdiction. In our State the Supreme Court has indicated rather clearly in its majority opinions that a school district has immunity from tort liability as a result of an injury such as alleged in this case. It is not disputed by the plaintiff that playground activities have a proper place in the physical and mental development of students. Therefore, it would come under the classification of a usual and proper governmental function of a school district.

"It does not appear that the court would be justified in permitting a jury to know whether or not the school district carried insurance. Reference to insurance can be made on *voir dire* examination of a jury, but it is limited to ascertaining whether a prospective juror is an officer, stockholder or member of any insurance company. See *Harker* v. *Bushouse,* 254 Mich 187.

"This type of question is one it would seem which should be answered by the legislature rather than by the courts."

We think that the trial court correctly determined the issue and, therefore, we concur in the affirmance of the orders from which the appeals have been taken.

Dethmers, C. J., and Kelly, J., concurred with Carr, J.

Black, J. (*concurring*). In *Christie* v. *Board of Regents of University of Michigan,* 364 Mich 202, seven members of the Court rejected the plaintiff's contention that a public body, being legally immune from tort liability, waives such immunity—to any extent—by purchasing and maintaining insurance against such liability. I bow to this overwhelming edict and accordingly join Mr. Justice Kavanagh in affirmance for the reason given by him.

Souris, J. (*dissenting*). By our decision in this case, and in *McDowell* v. *State Highway Commissioner,* 365 Mich 268, all of the former[1] horror of our common-law rule of governmental immunity is restored to full bloom and, by an adroit dribble in this "game of quasi-legal basketball,"[2] responsibility therefor is passed to the legislature. What we are told is that the old common-law rule of governmental immunity has become a legislative rule, subject to modification only by the legislature, by virtue of simple repeal of a prior statutory waiver of the State's immunity.

For too long on this Court the felt need for change in "grievously unjust"[3] rules of the common law has been thwarted, or at least delayed, by the fanciful notion that legislatures legislate by keeping silent. For payment of meritoriously due respects to this obstacle to performance of our oath-bound judicial duty, see Mr. Justice Talbot Smith's opinions in *Reed* v. *Employment Security Commission,* 364 Mich 395, at p 399, and *Sheppard* v. *Michigan National Bank,* 348 Mich 577, at p 599.

---

[1] See *Williams* v. *City of Detroit,* 364 Mich 231, 250–270.
[2] *Id.,* p 273. The expression is another's.
[3] *Id.,* p 275.

Today, a like need is thwarted, perhaps only delayed, by an even more fanciful notion that legislatures adopt as their very own doctrines originally conceived, born and nurtured to maturity by common-law courts simply by cryptically repealing[4] an intervening statutory waiver of the common-law doctrine's grant of immunity. We are told that by this sequence of legislative waiver of judge-made governmental immunity and subsequent repeal, and by nothing more, the previously waived common-law doctrine is magically reincarnated not in its original common-law flesh and blood and bones, but rather in an ethereal legislative form,—ethereal because it cannot be found, as can other "creatures of the legislature,"[5] in the State's statute books. If its form and shape and substance are to be discerned, we must look only to the dusty reports of this Court's decisions.

Whether PA 1943, No 237, be considered to have "repealed" or "abolished" the common-law doctrine or whether it be considered to have only waived the State's immunity from liability recognized by the doctrine, its own subsequent repeal cannot have the result claimed by our majority in *McDowell* and here. If Act No 237 was a waiver, as I believe it was, it left the common-law doctrine intact but waived, in express language, the State's immunity from liability. The subsequent withdrawal of that waiver, by PA 1945, No 87 (the repealer act), did not affect the continuing vitality of the common-law doctrine. In no sense can the waiver be considered, in my view, as a complete abrogation of the common-

---

4 The legislative language of creation relied upon is PA 1945, No 87, § 2 (Stat Ann 1959 Cum Supp § 27.3548[42]), which read:
"Section 24 of Act No. 135 of the Public Acts of 1939, as amended by Act No. 237 of the Public Acts of 1943, is hereby repealed." [This section 2 of PA 1945, No 87, was repealed by PA 1945, No 267, § 19, effective October 25, 1945.—REPORTER.]

5 *McDowell* v. *State Highway Commissioner, supra,* p 271.

law doctrine. That, however, is the view this Court has mistakenly taken.

But, even if that view were correct,— that Act No 237 repealed or abolished the common-law doctrine of governmental immunity,—the subsequent repeal of Act No 237 by PA 1945, No 87, has the effect at common law of reinstating the common-law doctrine in the absence of legislative mandate to the contrary. For recent application of this common-law rule, see *State* v. *General Daniel Morgan Post No 548, VFW*, 144 W Va 137 (107 SE2d 353). See, also, *Chism* v. *Phelps*, 228 Ark 936 (311 SW2d 297, 77 ALR2d 329), where the common-law rule is recognized.

The same rule at common law applied to revive statutes repealed by acts which, in turn, were later repealed. *Bender* v. *United States* (CCA 3), 93 F2d 814. In this State, however, the common-law rule as it applied to statutory law has been changed. CL 1948, § 8.4 (Stat Ann 1961 Rev § 2.213) provides:

"Whenever a statute, or any part thereof, shall be repealed by a subsequent statute, such statute, or any part thereof, so repealed, shall not be revived by the repeal of such subsequent repealing statute."

But no change was made in the rule as it applied to legislative abrogation of the common law. Hence, even if we assume that the common-law doctrine of governmental immunity was repealed by Act No 237, under the common law it was revived (as a common-law doctrine) by the subsequent repeal of Act No 237.

I conclude from all of the foregoing that we judicial descendants of the creators of the governmental-immunity doctrine have now, and had when we decided *Williams* v. *City of Detroit, supra,* the power and the duty to relieve its judge-made injustice. This power and this duty we share equally with the

legislature (Schedule, § 1, Const of 1908) and neither should be abdicated.

Some of the members of this Court sought to exercise that power and perform that duty in *Williams.* See Mr. Justice EDWARDS' opinion at pp 250–270. Mr. Justice BLACK's opinion in that case, pp 270–290, emphasized that those of us who signed Justice EDWARDS' opinion (Mr. Justice KAVANAGH and I are the only ones remaining on this Court who so signed) were dealing with the doctrine of *governmental* immunity, and not just *municipal* immunity. There was no suggestion in any of the opinions in that case that the doctrine as it affects the State had become a creature of the legislature and, thereby, immune from the judicial internment Justice KAVANAGH and I joined Justice EDWARDS and Justice TALBOT SMITH to give it.

The suggestion was made first in *McDowell* v. *State Highway Commissioner, supra,* the majority opinion in which did more than just belatedly proclaim our disability of self-correction of this doctrinal evil. In that majority opinion Justice BLACK was joined by 4 other members of this Court (including Justice KAVANAGH) in limiting the *Williams* decision to abrogation of *municipal* immunity only. By that opinion, and by the other opinions in this case, the doctrine of governmental immunity as it affects the State, its departments, commissions, boards, institutions, and agencies, has been granted by this Court a renewed, and judicially impregnable, lease on its destructive life.

The decision in *McDowell,* representing as it does a retreat by at least 1 member of this Court from the position manfully stated in *Williams,* foretold the result in these cases of Sayers and foredooms future plaintiffs crushed by the tortious arms of the State who seek relief from this reconstituted Court. Judicial reality, measured by the 5-vote majority in

*McDowell,* renders futile further exposition of the unanswered and unanswerable views expressed in *Williams* regarding our power and our duty to abrogate the doctrine of *governmental* immunity.

For the foregoing reasons I cannot subscribe to, or share responsibility for, the views expressed by my writing colleagues.

OTIS M. SMITH and ADAMS, JJ., took no part in the decision of this case.