BUSH v OSCODA AREA SCHOOLS

Docket No. 59242. Argued March 7, 1978 (Calendar No. 4).—Decided February 9, 1979.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 150, 155.

68 Am Jur 2d, Schools §§ 323, 324.

Rule of municipal immunity from liability for acts in performance of governmental functions as applicable to personal injury or death as result of nuisance. 56 ALR2d 1433-1435.

[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 162.

57 Am Jur 2d, Negligence § 110.

Tort liability of public schools and institutions of higher learning for accidents due to condition of buildings or equipment. 34 ALR3d 1178-1180.

‹ Tort liability of public schools and institutions of higher learning. 86 ALR2d 549.

[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 53, 59-62.

Modern status of Doctrine of Sovereign Immunity as applied to public schools and institutions of higher learning. 33 ALR3d 710-726.

[5, 6] 68 Am Jur 2d, Schools §§ 323, 324.

Tort liability of private schools and institutions of higher learning for accidents due to condition of buildings, equipment, or outside premises. 35 ALR3d 987-993.

Tort liability of public schools and institutions of higher learning for accidents due to condition of buildings or equipment. 34 ALR3d 1177.

Tort liability of public schools and institutions of higher learning. 86 ALR2d 532.

[7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 314.

Tort liability of public schools and institutions of higher learning for accidents due to condition of buildings or equipment. 34 ALR3d 1179-1188.

Tort liability of public schools and institutions of higher learning. 86 ALR2d 530-533.

[8] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 306, 313, 314.

57 Am Jur 2d, Negligence § 7.

Tort liability of public schools and institutions of higher learning for accidents due to conditions of buildings or equipment. 34 ALR3d 1191-1204.

Annie M. Bush, for herself and as next friend of Tracey-Ann Foxworth, brought an action for damages for injuries Tracey-Ann suffered in an explosion of a jug of wood alcohol in a school classroom against Oscoda Area Schools, its superintendent, T. C. Filppula, a teacher, Gaye A. Manning and a school principal, William F. Estes. The Iosco Circuit Court, Allan C. Miller, J., granted summary judgment for the defendants on grounds of governmental immunity. The Court of Appeals, M. J. Kelly, P.J., and Bronson and Peterson, JJ., each writing separately, reversed in part, deciding that defendants Manning

---

[9] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 53, 55.
  57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 306, 307.
  57 Am Jur 2d, Negligence § 7.
[10] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 155.
  63 Am Jur 2d, Public Officers and Employees § 287.
  Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 33 ALR3d 769.
[11, 12] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 38, 39, 77, 312.
  Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 33 ALR3d 711.
[13] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 2, 27, 28, 32, 59, 73.
[14] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 11-16.
  Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 34 ALR3d 714.
  Tort liability of public schools and institutions of higher learning. 86 ALR2d 499. ALR2d 499.
[15] 68 Am Jur 2d, Schools §§ 320, 321.
  Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 33 ALR3d 710.
  Tort liability of public schools and institutions of higher learning for accidents due to condition of buildings or equipment. 34 ALR3d 1166.
[16] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 1-3, 16, 18, 31, 32, 59, 60.
  Municipal immunity from liability for torts. 60 ALR2d 1199.
[17] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 155.
  68 Am Jur 2d, Schools § 321.
  Tort liability of public schools and institutions of higher learning for accidents due to condition of buildings or equipment. 34 ALR3d 1166.
[18] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 155.
  68 Am Jur 2d, Schools § 321.
  Personal liability of public school officers, or teachers or other employees for negligence. 1174.

and Estes, as teacher and principal, might be liable if they were negligent in their own acts (Docket No. 24334). The plaintiffs and defendants Manning and Estes appeal. *Held:*

The complaint states a claim upon which relief can be granted as to the Oscoda Area Schools. As to the superintendent, the principal, and the teacher, three justices would hold that the complaint states claims against them, one would hold that it does not, two justices would hold that they were engaged in a governmental function and therefore immune from liability for ordinary negligence, and one justice would hold that only their *ultra vires* activities are not protected by governmental immunity.

Justice Levin, joined by Justices Kavanagh and Fitzgerald, wrote:

1. The defective building provision of the governmental tort liability act states a duty, "to repair and maintain", and in providing a cause of action extends it to "a dangerous or defective condition of a building". This provision is construed in the same way as the Court has construed the defective highway provision of the act. Governmental agencies are subject to liability for a dangerous or defective condition of a public building without regard to whether it arises out of a failure to repair and maintain. A building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices.

2. In providing statutory exceptions to the general grant of immunity from liability for torts, the Legislature intended to protect the general public from injury by imposing upon governmental agencies the duty to maintain safe public places. Whether a part of a building, in this case a classroom, is dangerous or defective is to be determined in light of the uses or activities for which it is specifically assigned, in this case a physical science class. A building may be safe for one use or purpose, but not for another. It is ordinarily unnecessary to install laboratory safety equipment in classrooms, but the room in which the injury occurred had, by use, become a physical science classroom. Therefore, it had to meet the standards of a physical science room although it had once been a mathematics room.

3. The trier of fact must determine whether the room was defective when used as a physical science classroom and, if so, whether the defect was a cause of Tracey Foxworth's injuries. Conceding that the alleged course of classroom conduct would be dangerous even in a properly equipped laboratory, it is yet

possible that if the room were properly equipped the accident would not have occurred or the injuries would have been less severe. The significance of the defect in relation to the injuries is a question of fact.

4. A governmental agency is not subject to liability for a dangerous or defective condition under the governmental tort liability act unless it had knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public. It was thus a question of fact whether the school district, with knowledge of the defect, failed to take action reasonably necessary to protect the students. Temporary use of the unconverted room because of increased enrollment may have been reasonable provided the school district took appropriate action to protect the students until permanent protective measures could be provided.

5. The complaint against the individual defendants was improperly dismissed because it does state claims upon which relief can be granted against them.

Justice Moody, concurring in part with Justice Levin, dissented from the conclusions concerning the individual defendants' liability. The superintendent, the principal, and the teacher were engaged in primarily discretionary activities that are of essence to government. The duties owed to the public by these employees transcend any private duty, and consequently they are immune as to any ordinary negligence claim.

Chief Justice Coleman concurred with Justice Moody regarding the liability of individual defendants.

Justice Williams, concurring in part with Justice Levin, would adopt a standard for governmental immunity as to individuals performing a governmental function in which *ultra vires* activities of public employees are the only ones not protected by governmental immunity because the exercise or discharge of a governmental function is not involved.

Reversed and remanded for trial.

Justice Ryan, joined by Chief Justice Coleman, dissented.

1. The threshold consideration in determining whether the defense of governmental immunity is applicable is whether the school district and its employees were engaged in the exercise or discharge of a governmental function. The Legislature intended that the Supreme Court look to the common law for guidance in each case. The Court has consistently held the operations of a public school to comprise a governmental function. In addition, an analysis of the complaint shows that the

activities in this case clearly fell within the purview of the operation of a public school.

2. The Court construes the public building exception of the immunity statute as imposing on governmental agencies the duty to maintain "safe" public places, and holds that a school classroom must be made safe for its then assigned use. Such a construction of the building exception does not square with the manifest intent of the Legislature expressed in the immunity statute. In that statute the Legislature made the policy judgment that state agencies must be free to engage in endeavors for the common good unhampered by the constraint of potential tort liability, and carved out a few exceptions to the grant of immunity in balancing the interests of the people of the state against the interests of persons injured by the tortious acts of state agencies or their employees. The Court's construction and application of the building exception significantly undermines the intent of the general immunity provision by characterizing as a building defect what is actually the behavior of the school district's employees in using part of a school building for a purpose for which it was not designed, constructed, or intended to be used. A building or classroom is to be used in accordance with the purpose for which it was designed and constructed; failure to do that may amount to negligence on the part of the user, but surely does not constitute the building defective. The essence of the plaintiffs' claim relates to the allegedly improper use of the classroom as a physical science laboratory despite the fact that it was neither designed nor equipped for laboratory experiments. The tortious conduct alleged does not relate to a dangerous or defective condition in the building, but, rather, to the conduct of school authorities in utilizing as a science laboratory a room which was properly designed, constructed, and equipped for teaching mathematics. The summary judgment should be affirmed.

72 Mich App 670; 250 NW2d 759 (1976) reversed in part.

OPINION OF THE COURT

1. STATES — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS — HIGHWAYS.

The defective building provision of the governmental tort liability act states a duty to "repair and maintain", and in providing a cause of action extends it to "a dangerous or defective condition of a building"; this provision is construed in the same way that the Court has construed the defective highway provision of the act, as subjecting an agency to liability for a dangerous or defective condition without regard to whether it arises out of a

failure to repair or maintain (MCL 691.1402, 691.1406; MSA 3.996[102], 3.996[106]).

2. STATES — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS.

Governmental agencies are subject to liability for a dangerous or defective condition of a public building without regard to whether it arises out of a failure to repair and maintain; a building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices (MCL 691.1406; MSA 3.996[106]).

3. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS.

Whether a part of a public building, *e.g.,* a classroom, is dangerous or defective is to be determined in light of the uses or activities for which it is specifically assigned, for example, a physical science class; a building may be safe for one use or purpose, but not for another (MCL 691.1406; MSA 3.996[106]).

4. STATES — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS.

The Legislature, in providing statutory exceptions to the general grant of immunity from liability for torts, intended to protect the general public from injury by imposing upon governmental agencies the duty to maintain safe public places (MCL 691.1402, 691.1405, 691.1406, 691.1407; MSA 3.996[102], 3.996[105], 3.996[106], 3.996[107]).

5. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS.

Lack of certain safety devices does not render a classroom defective per se; it is ordinarily unnecessary to install laboratory safety equipment in classrooms, but where a room in which an injury occurred had, by use, become a physical science classroom it had to meet the standards of a physical science room although it had once been a mathematics room (MCL 691.1406; MSA 3.996[106]).

6. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS.

The significance of a defect in a public school building in relation to injuries sustained in it is a question of fact; *e.g.,* conceding that a course of classroom conduct would be dangerous even in a properly equipped laboratory classroom, it is yet possible that if the room were properly equipped the accident would not

have occurred or the injuries would have been less severe (MCL 691.1406; MSA 3.996[106]).

7. STATES — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILD-INGS — KNOWLEDGE.

A governmental agency is not subject to liability for a dangerous or defective condition under the governmental tort liability act unless it had knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public (MCL 691.1406; MSA 3.996[106]).

8. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS.

Whether a school district, with knowledge of the defect, failed to take action reasonably necessary to protect the students from an insufficiently equipped physical science classroom was a question of fact; temporary use of the unconverted room because of increased enrollment may have been reasonable provided the school district took appropriate action to protect the students until permanent protective measures could be provided (MCL 691.1406; MSA 3.996[106]).

9. SCHOOLS AND SCHOOL DISTRICTS — TORTS — SUMMARY JUDGMENT — PUBLIC EMPLOYEES.

*A complaint against individual defendants, a school superintendent, a principal, and a classroom teacher, alleging negligent acts of commission and omission in conducting a science class in a non-laboratory room, was improperly dismissed because it stated claims upon which relief can be granted against them (GCR 1963, 117.2[1]).*

OPINION CONCURRING IN PART AND DISSENTING IN PART BY BLAIR
MOODY, JR., J.

See headnotes 1-8.

10. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY ACT — NEGLIGENCE — PUBLIC EMPLOYEES.

*A school superintendent, principal, and teacher scheduling, supervising, and conducting classroom activities were engaged in primarily discretionary activities that are of essence to government; the duties owed to the public by these employees transcend any private duty, and consequently they are immune from liability as to any ordinary negligence claim (MCL 691.1407; MSA 3.996[107]).*

OPINION CONCURRING IN PART AND DISSENTING IN PART BY
WILLIAMS, J.

See headnotes 1-8.

11. STATES — GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES.
    *The standard for governmental immunity as to individuals per-
    forming a governmental function should be one in which* ultra
    vires *activities of public employees are the only ones not
    protected by governmental immunity because the exercise or
    discharge of a governmental function is not involved (MCL
    691.1407; MSA 3.996[107]).*

DISSENTING OPINION BY RYAN, J.

12. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY
    ACT — GOVERNMENTAL FUNCTION.
    *The threshold consideration in determining whether the defense
    of governmental immunity is applicable to a school district is
    whether the school district and its employees were engaged in
    the exercise or discharge of a governmental function (MCL
    691.1407; MSA 3.996[107]).*

13. STATES — GOVERNMENTAL TORT LIABILITY ACT — GOVERNMENTAL
    FUNCTION — COMMON LAW.
    *The Legislature intended that the Supreme Court look to the
    common law for guidance in each governmental immunity case
    to determine what activities constitute a "governmental func-
    tion" (MCL 691.1407; MSA 3.996[107]).*

14. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY
    ACT — GOVERNMENTAL FUNCTION.
    *The Supreme Court has consistently held the operations of a
    public school to comprise a governmental function (MCL
    691.1407; MSA 3.996[107]).*

15. SCHOOLS AND SCHOOL DISTRICTS — GOVERNMENTAL TORT LIABILITY
    ACT — GOVERNMENTAL FUNCTION.
    *Analysis of a complaint alleging that a public school student was
    injured by reason of classroom activities shows that the activi-
    ties complained of clearly fell within the purview of the opera-
    tion of a public school (MCL 691.1407; MSA 3.996[107]).*

16. STATES — GOVERNMENTAL TORT LIABILITY ACT — PUBLIC POLICY.
    *The Legislature made the policy judgment that state agencies
    must be free to engage in endeavors for the common good
    unhampered by the constraint of potential tort liability, and*

*carved out a few exceptions to the statutory grant of immunity in balancing the interests of the people of the state against the interests of persons injured by the tortious acts of state agencies or their employees (MCL 691.1402, 691.1405, 691.1406, 691.1407; MSA 3.996[102], 3.996[105], 3.996[106], 3.996[107]).*

17. Schools and School Districts — Governmental Tort Liability Act — Defective Buildings.

   *A public school classroom is to be used in accordance with the purpose for which it was designed and constructed; failure to do that may amount to negligence on the part of the user, but surely does not constitute the building defective (MCL 691.1406; MSA 3.996[106]).*

18. Schools and School Districts — Governmental Tort Liability Act — Negligence — Defective Buildings.

   *A complaint which essentially relates to the allegedly improper use of the classroom as a physical science laboratory despite the fact that it was neither designed nor equipped for laboratory experiments does not relate to a dangerous or defective condition in the building under the governmental tort liability act, but, rather, to the conduct of school authorities in utilizing as a science laboratory a room which was properly designed, constructed, and equipped for teaching mathematics (MCL 691.1406; MSA 3.996[106]).*

*Boyce, Yahne & Wenzel* for plaintiffs.

*Keil & Henneke* for defendants Oscoda Area Schools.

*Freel & Huck, P.C.,* for defendants Gaye Ann Manning and William F. Estes.

Levin, J. Tracey-Ann Foxworth, then 14, was burned when a jug of wood alcohol exploded during a physical science class in a public school.

Her mother, Annie M. Bush, individually and as next friend, commenced this action against Oscoda Area Schools, its superintendent, the principal and the classroom teacher. The circuit judge granted defendants' motion for summary judgment on the ground that the complaint failed to state a claim

upon which relief could be granted.[1] The Court of Appeals affirmed as to the school district and the superintendent and reversed as to the principal and teacher.[2]

We conclude that the complaint states claims as to all defendants, and remand for trial.

I

Foxworth attended Oscoda High School and was enrolled in Introductory Physical Science. The class had been conducted in the chemistry laboratory, but due to increased enrollment was rescheduled to meet in a non-laboratory room. The chemistry laboratory was equipped with a safety shower, ventilation or exhaust hoods, sinks, enclosed storage areas, stationary laboratory desks and water and gas outlets. The substitute room was not so equipped.

The classroom teacher had complained to the school principal about the substitute room: She said[3] "[y]ou cannot keep sending us this many students and expect us to do lab work in rooms this size where the tables move too easily. It's just too crowded". "When you throw more students in that classroom * * * [y]ou have more hands to get into things, more bodies in the small amount of

[1] The motion was brought under GCR 1963, 117.2(1), failure to state a claim upon which relief can be granted. The parties stipulated that the judge could consider depositions in deciding the motion. The depositions are a part of the record on appeal and are the basis of the facts related in Part I.

We do not wish to be understood as indicating that even upon stipulation of the parties a judge may decide disputed factual questions in resolving whether a complaint states a claim upon which relief can be granted. We view the stipulation as permitting consideration of undisputed testimony as an expansion and particularization of allegations of plaintiff's complaint.

[2] *Bush v Oscoda Area Schools,* 72 Mich App 670, 676; 250 NW2d 759 (1976).

[3] See fn 1, *supra.*

space, more confusion at times. People sometimes bump into each other. You tend to have more clumsiness occurring and it's just too hard to manage too many students."

Introductory Physical Science is the first science course offered the high school students. The course experiments are relatively simple. During the first six to ten weeks the experiments concentrate on measuring. At about the eighth to tenth week the experiments require heat, and burners are used in two experiments. In the chemistry laboratory the students use gas-fired burners which are connected to a permanent installation for the gas supply. In the substitute room portable alcohol burners were used.

The alcohol was stored in the chemistry lab. A practice developed of pouring the alcohol into a plastic jug for transport to the substitute classroom. Before school the classroom teacher poured enough alcohol into the jug for the day's classes. The alcohol jug and burners were put on the rear counter. The jug had an open top. Students filled their burners at the counter and took them to their desks. The classroom teacher lit the burners at the desks. Goggles were worn during the experiment. After the experiment the students were to extinguish the burners and return them to the counter.

At the time of the accident Foxworth was returning her burner and noticed a lighted burner on the counter. She picked it up and as she attempted to extinguish it an explosion occurred and she caught fire.

Foxworth panicked. Another teacher came into the room. The fire extinguisher, which was kept at the opposite end of the room, was given to the classroom teacher and she put out the fire.

Foxworth suffered second- and third-degree burns.

## II

Plaintiffs contend that the school district is not immune from suit because:

i) the governmental tort liability act[4] is unconstitutional, or, alternatively,

ii) the operation of a school is not a "governmental function" within the meaning of that act, and, in any event,

iii) it is liable under the defective building provision[5] of the act because the classroom lacked necessary safety equipment.

Three Justices have indicated in other opinions[6] that a school district is subject to liability for negligence[7] in the operation of a school and would therefore find it unnecessary to decide whether the complaint states a claim within the defective

[4] MCL 691.1401 et seq.; MSA 3.996(101) et seq.

[5] MCL 691.1406; MSA 3.996(106).

[6] I would hold on equal protection grounds that a school district is subject to the same liability as a private school. See *Thomas v Dep't of State Highways,* 398 Mich 1, 14; 247 NW2d 530 (1976). Justice KAVANAGH and Justice FITZGERALD have said in an opinion which I signed that the operation of a school is not a governmental function. *Thomas v Dep't of State Highways, supra,* pp 21-22. See, also, *Pichette v Manistique Public Schools,* 403 Mich 268; 269 NW2d 143 (1978).

[7] Plaintiff's negligence theory and defective building theory are not equivalents. Plaintiff's negligence theory was that the defendants failed to exercise due care in holding the class in a non-laboratory room, scheduling too many students in the classroom and failing to adequately supervise the class.

Plaintiff's defective building theory is based on lack of safety devices.

The two theories are not equivalents because plaintiff might fail to prove that lack of safety devices, the alleged building defect, was a cause of the injury, and yet, had they been permitted to proceed on the negligence theory, may have been successful in establishing, for example, that the lack of supervision or the size of the class was a cause of the injuries.

building provision. Because there is no majority to so hold, we must determine whether the complaint states a claim within the defective building provision. We hold that it does.

The defective building provision, in relevant part, reads as follows:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building." MCL 691.1406; MSA 3.996(106).

The school district contends that the provision "impose[s] liability only for those injuries resulting from defective conditions in public buildings *caused* by inadequate or negligent repairs or maintenance [emphasis in original]". The duty is only to "repair and maintain", and unless that duty is breached there can be no liability. Plaintiffs have not alleged a failure to "repair or maintain" the building and have therefore failed to state a cause of action.

In an analogous situation involving defective highways, this Court has rejected similar arguments. Statutes imposed a duty to keep highways "in reasonable repair" and "reasonably safe and fit [or 'convenient'] for travel".[8] It was unsuccessfully

---

[8] "Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency." MCL 691.1402; MSA 3.996(102).

The source of the statute contained almost identical language. It imposed on townships, villages, cities or corporations "the *duty * * * to keep in reasonable repair,* so that they shall be reasonably safe and convenient for public travel, all public highways * * *". (Emphasis

argued that "reasonable repair" qualifies and limits "reasonably safe and fit [convenient] for travel".

In *Joslyn v Detroit,* 74 Mich 458, 459, 460; 42 NW 50 (1889), the city claimed that it was not liable "because the injury did not result from a want of repair of the street",[9] and in *Finch v Village of Bangor,* 133 Mich 149, 150; 94 NW 738 (1903), the village argued that it was not liable because "want of repair was not the immediate cause of the injury".[10] This Court construed the

supplied.) 1909 PA 283, ch 22, § 3; 1915 CL 4586; 1929 CL 4225; 1948 CL 242.3; 1887 PA 264, § 3; 1897 CL 3443; 1885 PA 214, § 4; 1879 PA 244, § 4.

Another section of the act created the cause of action for those injured by reason of a defective highway. It provided:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert and *whose duty it is to keep the same in reasonable repair,* such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction." 1909 PA 283, ch 22, § 1; 1915 CL 4584, § 1; 1929 CL 4223, § 1; 1948 CL 242.1; 1887 PA 264, § 1; 1897 CL 3441, § 1; 1885 PA 214, § 1; 1879 PA 244, § 1 (emphasis supplied).

The comparable statute imposing on counties the duty to keep highways in reasonable repair contains the same language as the repealed city-township statute. The county statute, as does the present defective highway statute, establishes the cause of action within the provision imposing the duty. MCL 224.21; MSA 9.121.

[9] In *Joslyn v Detroit,* 74 Mich 458, 459; 42 NW 50 (1889), a private citizen had piled sand in the street while building a house. Plaintiff claimed that the city was negligent "in allowing and in allowing the said bank to obstruct the street for so long a time, and in not providing suitable warnings to prevent any collision therewith".

[10] This Court held it to be a jury question whether under the circumstances the street was kept in a reasonably safe condition. *Finch v Village of Bangor,* 133 Mich 149, 151; 94 NW 738 (1903); see, also, *McEvoy v Sault Ste Marie,* 136 Mich 172; 98 NW 1006 (1904); *Jablonski v Bay City,* 248 Mich 306; 226 NW 865 (1929); *Kowalczyk v Bailey,* 379 Mich 568; 153 NW2d 660 (1967); *Peters v Dep't of State Highways,* 400 Mich 50; 252 NW2d 799 (1977); *Mullins v Wayne County,* 16 Mich App 365; 168 NW2d 246 (1969).

statutes as imposing a duty to keep the highway both in "good repair" and in a condition "reasonably safe and fit for travel".

In *Malloy v Walker Twp,* 77 Mich 448, 458; 43 NW 1012 (1889), the plaintiff did not claim any failure to repair, but asserted that the township had been negligent in not providing barriers or railings along the side of an embankment. The township asserted that liability could not be imposed "on account of a plan or scheme of construction of a road". This Court responded:

"A municipality cannot construct a dangerous and unsafe road,—one not safe and convenient for public travel,—and shield itself behind its legislative power to adopt a plan and method of building and constructing in accordance therewith." *Id.,* p 462.[11]

The defective building provision is structurally similar to the defective highway provisions. It states a duty, "repair and maintain", and in providing a cause of action extends it to "a dangerous or defective condition of a building". We construe the defective building provision as we have the defective highway provision. Governmental agencies are subject to liability for a dangerous or defective condition of a public building without regard to whether it arises out of a failure to repair and maintain.

As in the highway cases, a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices.

Plaintiff has alleged that the improper design of the classroom and absence of safety devices ren-

[11] See, also, *Carver v Detroit & Saline Plank Road Co,* 61 Mich 584, 590; 28 NW 721 (1886).

dered it unsafe as a science classroom, and the classroom was therefore dangerous and defective and a cause of Foxworth's injuries.

III

Two judges of the Court of Appeals said that "as to particular uses or activities for which a public building, or a part thereof, is specifically assigned, failure to provide the usual building components and safety devices appropriate to such contemplated use would be actionable under the statute",[12] but affirmed the summary judgment because "the complaint alleges a course of classroom conduct which would be dangerous even in a properly equipped laboratory".[13] The third judge agreed with affirmance because Foxworth's "injury did not result from a defective condition of the building but from the use to which the classroom was put".[14]

We agree with the majority of the Court of Appeals that the question whether a part of a building, in this case a classroom, is dangerous or defective is to be determined in light of the "uses or activities" for which it is "specifically assigned", in this case a physical science class. As stated in *Pichette v Manistique Public Schools,* 403 Mich 268, 285; 269 NW2d 143 (1978) (FITZGERALD, J.), "in providing for the three exceptions to the general grant of immunity contained in MCL 691.1407; MSA 3.996(107), the Legislature intended to protect the general public from injury by imposing upon governmental agencies the duty to maintain *safe public places,* whether such places are

---

[12] *Bush v Oscoda Area Schools, supra,* p 699 (PETERSON, J.).

[13] *Id.,* p 700.

[14] *Id.,* p 675 (KELLY, J.).

public highways or public buildings." (Emphasis supplied.)

To be sure, the lack of certain safety devices did not render the classroom defective per se; it is ordinarily unnecessary to install laboratory safety equipment in classrooms. In determining whether a place is safe, one must consider the use or purpose it serves. A building may be safe for one use or purpose, but not for another. A school is not a school because it is called one, but because it is used and functions as one. If a hospital is converted into a prison, the building must be maintained as a safe prison, not as a safe hospital. The room in which Foxworth was injured had by use become a physical science room, and therefore had to meet the standards of a physical science room although it had once been a mathematics room.

The trier of fact must determine whether the room was defective when used as a physical science classroom and, if so, whether the defect was a cause of Foxworth's injuries. Conceding that the alleged "course of classroom conduct * * * would be dangerous even in a properly equipped laboratory", it is yet possible that if the room were properly equipped the accident would not have occurred or the injuries would have been less severe. The question of the significance of the defect in relation to the alleged injuries is a question of fact.

IV

The school district claimed that increased enrollment necessitated conducting physical science classes in non-laboratory rooms. We recognize that circumstances change and temporary accommodation must be made so that business may continue

while adjustments are being made. In such situations it might be reasonable to change temporarily the use of a building or room or in the case of a highway, reroute traffic.

A governmental agency is not subject to liability for a dangerous or defective condition unless it "had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition".[15] It was thus a question of fact whether the school district, with knowledge of the defect, failed "to take action reasonably necessary to protect" the students. Temporary use of the unconverted room may have been reasonable provided the school district took appropriate action to protect the students until permanent protective measures could be provided.[16]

## V

The complaint against the individual defendants was dismissed on the ground that it failed to state a claim upon which relief can be granted, GCR 1963, 117.2(1). The complaint did state claims against the individual defendants.

We reverse and remand for trial.

KAVANAGH and FITZGERALD, JJ., concurred with LEVIN, J.

---

[15] MCL 691.1406; MSA 3.996(106).

[16] Similarly, in the highway situation, when there is a temporary detour during construction, it is within the duty to keep highways safe for public travel that the city "must take into account the natural inclination of children to run about in play and the perverse insistence of adults to cut corners and cross streets and grass plats instead of following precisely the beaten or provided path". *Jablonski v Bay City, supra,* p 310.

BLAIR MOODY, JR., J. *(concurring in part, dissenting in part).* I concur with Justice LEVIN's conclusions through part IV. I dissent from the conclusions stated in part V concerning the individual defendants' liability.

The superintendent, principal and teacher were performing primarily discretionary activities that are of essence to government. The duties owed to the public by these employees transcend any private duty. Consequently, these employees are immune from liability as to any alleged ordinary negligence claim. I would remand this case for trial as to defendant Oscoda Area Schools.

COLEMAN, C.J. *(concurring in part with* BLAIR MOODY, JR., J.*).* I concur with the holding in the second full paragraph regarding the liability of individual defendants.

WILLIAMS, J. *(concurring).* I concur fully in parts I-IV of Justice LEVIN's opinion. As to part V, I would adopt a standard for governmental immunity as to individuals performing a governmental function as described in *McCann v Michigan,* 398 Mich 65, 73-74; 247 NW2d 521 (1976), in which the *ultra vires* activities of public employees are the only ones not protected by governmental immunity because the exercise or discharge of a governmental function is not involved. See, also, WILLIAMS' opinion in *Galli v Kirkeby,* 398 Mich 527; 248 NW2d 149 (1976).

RYAN, J. *(dissenting).* The threshold consideration in determining whether the governmental immunity defense of MCL 691.1407; MSA 3.996(107)[1] is applicable to the instant case is

---

[1] "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a

whether, at the time Tracey-Ann Foxworth was injured, the Oscoda Area Schools and its employees were engaged in the exercise or discharge of a governmental function. In *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), we recognized that the Legislature, by failing to statutorily define the term "governmental function", intended that this Court look to the common law for guidance in determining whether governmental immunity was applicable in each case. On examination of case precedent, we find that this Court has consistently held the operations of a public school to comprise a governmental function.[2] *Sayers v School District No 1, Fractional,* 366 Mich 217, 219; 114 NW2d 191 (1962); *Richards v Birmingham School District,* 348 Mich 490, 506; 83 NW2d 643 (1957); *Daszkiewicz v Detroit Board of Education,* 301 Mich 212, 220; 3 NW2d 71 (1942); *Daniels v Board of Education of Grand Rapids,* 191 Mich 339; 158 NW 23 (1916). In addition, an analysis of the allegations in the plaintiffs' complaint[3] reveals that the activities in

governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

[2] The operation of a public school also comes within the "common good of all" definition of "governmental function" frequently cited by Michigan courts. *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619, 621; 196 NW 386 (1923), citing *Bolster v City of Lawrence,* 225 Mass 387; 114 NE 722 (1917). See, also, *McCann v Michigan,* 398 Mich 65, 79; 247 NW2d 521 (1976) (opinion of RYAN, J.), and opinions cited therein.

[3]

Count I

"17. That the defendants had a duty to exercise reasonable care to prevent students such as Tracey-Ann Foxworth from suffering injury due to foreseeable risks present under the said circumstances alleged in Paragraphs 8 through 13 of Count I of this complaint and in light of the age, maturity, experience and judgment of the students in Physical Science and particularly in the light of the explosive potential of a large quantity of alcohol and in view of the equipment

construction requirements set by the United States Government for this particular school and the requirements of the Fire Prevention Act, being MCL 29.1-29.25, as amended, and the rules adopted and promulgated by the Commissioner of the State Police pursuant to the said statute. Defendants had a duty not to deliberately expose students to a defective classroom and to unreasonably large quantities of alcohol not properly packaged or contained and which defendants knew, or should have known, was capable of exploding with great violence. Defendants' duty was commensurate with the grave risks attending such exposure.

"18. That the defendants were negligent, jointly and severally, in the conducting of the course in Physical Science in the following respects:

"(a) They undertook to hold the class in a room which was not designed, equipped or constructed for the performance of chemistry experiments involving the use of extra hazardous substances such as alcohol when they knew or should have known that this would be dangerous to the students and particularly would deny them access to the shower type device available in the chemistry laboratory.

"(b) They scheduled too many students in the class such that overcrowding resulted, equipment and supplies were congested, storage space was lacking and proper supervision by the teacher was difficult or impossible.

"(c) They failed to warn, instruct and supervise or provide adequate warning, instruction and supervision for the students as to the handling of their equipment and extra hazardous and inflammable substances such as alcohol and allowed spilled alcohol to lie on the counter contrary to good housekeeping practice when they knew or should have known that the alcohol would be exposed to sources of ignition in the form of matches and burning alcohol lamps.

"(d) They failed to handle, store or put away a large quantity of an extra hazardous and inflammable substance, alcohol, in a place not exposed to the open laboratory area when burning alcohol lamps would be in use by many student partners in violation of the said Fire Prevention Act and the rules adopted and promulgated pursuant to that act.

"(e) They failed to store a large quantity of an extra hazardous and inflammable substance, alcohol, in a safe container, but chose a damaged and split container which had originally contained another type of fluid and was not designed to dispense alcohol in the presence of sources of ignition.

"(f) They failed to have the fire alarm equipment in proper working order or energized and did not train and instruct students and personnel how to operate the alarm and extinguisher equipment.

"(g) They failed to follow laboratory requirements set out by the United States government, which advanced funds for the construction of the school and equipment, when the defendants had agreed to observe these requirements."

Count II

"17. That the defendants' acts of deliberately and intentionally:

"(a) scheduling the class in a room which was not designed, equip-

this case clearly fell within the purview of the operation of a public school. Accordingly, alleged tortious activities are within the ambit of a governmental function, for which immunity is accorded pursuant to MCL 691.1407; MSA 3.996(107).

In Count III of plaintiffs' complaint, it is alleged that the classroom in which the accident occurred was "defective" by reason of the lack of certain equipment such as safety showers, storage area, sinks and other laboratory equipment. Plaintiff further avers that the condition of the classroom comes within the statutory "building" exception to the grant of governmental immunity.

The defective building provision, in relevant part, provides:

"Governmental agencies have the obligation to repair

ped or constructed for the performance of chemistry experiments involving the use of extra hazardous and inflammable substances such as alcohol; and

"(b) scheduling too many students in the class such that overcrowding resulted, equipment and supplies were congested, storage space was lacking and proper supervision by the teacher was impossible; and

"(c) placing upon the rear counter a large quantity of an extra hazardous substance, alcohol, in a damaged and split container which had originally contained another type of fluid and which was not designed to dispense alcohol in the presence of open flame lamps or matches, and

"(d) ignoring the construction and equipment requirements set out by the United States federal government."

Count III

"17. That defendants conducted the class in question in a building defective by reason of the lack of safety equipment such as a safety shower, fire alarms and extinguishers, storage area, sinks and a complete lack of laboratory equipment in the classroom, contrary to MCL 691.1406."

Count IV

"17. That to allow such a quantity of inflammable alcohol to remain upon an open counter where it might be exposed to sources of ignition and might be spilled by inexperienced students was an abnormal, extraordinary and exceptional use of a known inflammable liquid and was contrary to the said Fire Prevention Act and the defendants are strictly liable for the damages resulting from the explosion."

and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building * * *." MCL 691.1406; MSA 3.996(106).

The majority construes the building exception as imposing upon governmental agencies the duty to maintain "safe" public places. In so construing the building provision, the majority holds that a public building, or more specifically a school classroom, must be made safe for its then assigned use. Accordingly, the determination of whether a public building or classroom is free from dangerous or defective conditions must be made in light of the particular features, safety devices or equipment germane to the activity which the building or classroom houses.

Although I find the majority approach appealing as a substantive rule of law, I am compelled to dissent because such a construction of the "building" exception does not at all square with the manifest intent of the Legislature[4] as expressed in the governmental immunity statute, MCL 691.1407; MSA 3.996(107).

In MCL 691.1407; MSA 3.996(107), the Legislature undertook to balance the interests of the people of the State of Michigan against the interests of persons injured by the tortious acts of state agencies or their employees, in the light of its sweeping policy judgment that state agencies must

---

[4] As Mr. Justice Carr said in *Jones v Grand Ledge Public Schools,* 349 Mich 1, 11; 84 NW2d 327 (1957):

"It is not within the province of this Court to read therein a mandate that the Legislature has not seen fit to incorporate. Our duty is to apply the law as we find it."

It is equally outside of the province of this Court to pass upon the wisdom of legislation. *Grand Rapids Motor Coach Co v Public Service Commission,* 323 Mich 624, 634; 36 NW2d 299 (1949).

be free to engage in various endeavors for the common good of all of the people of the State of Michigan, unhampered by the constraint of potential tort liability. In service to the balancing process the Legislature carved out a few exceptions to its grant of governmental immunity, one of which is at issue today.

When construing an exception to a general rule, care must be taken not to derogate from the general rule to the extent that its intent and purpose is undermined. See *Grand Rapids Motor Coach Co v Public Service Commission,* 323 Mich 624, 634; 36 NW2d 299 (1949). Today's majority construes and applies the "building" exception in a way which significantly undermines the intent of the general immunity provision by characterizing as a building defect what is actually the behavior of the school district's employees in utilizing a portion of the school building for a unique and highly specialized and always dangerous purpose, one for which it was not designed, constructed or intended to be used.

Simple logic compels the conclusion that a building or classroom is to be used in accordance with the purpose for which it was designed and constructed[5] and that while the failure to do that may amount to negligence on the part of the user, it surely does not constitute the building defective. In this case all of the parties agree that the classroom in question was designed and constructed for use as a mathematics classroom. The "defect", which the majority finds, is in the absence in a mathematics classroom of features or equipment peculiar to a laboratory or science classroom such as a safety shower, ventilation or

---

[5] In instances of renovation, one must look to the purpose for which the building was redesigned or reconstructed.

exhaust hoods, sinks, enclosed storage areas, stationary laboratory desks and water and gas utilities. Common sense suggests that before one can conclude that a building is defective, it must first be ascertained whether the use to which it was put was reasonable.

It is eminently clear from an examination of the plaintiffs' complaint that the essence of plaintiffs' claim relates to the allegedly improper *use* of the classroom as a physical science laboratory despite the fact that it was neither designed nor equipped for laboratory experiments. As such, the alleged tortious conduct does not relate to a dangerous or defective condition in the building but, rather, to the conduct of the school authorities in utilizing as a science laboratory a room which was properly designed, constructed and equipped for teaching mathematics.

In concluding today that the test for determining whether a public building is "defective" and the agency operating it liable for failure to "maintain and repair" it, is whether it is safe in view of the *use* to which it is put, the Court does substantial violence to the will of the Legislature as the price of its not so thinly disguised disagreement with the doctrine of governmental immunity.

I would affirm the order of the trial court granting the motion for summary judgment for failure to state a cause of action.

COLEMAN, C.J., concurred with RYAN, J.