DAVIS v CITY OF DETROIT

Docket No. 78994. Submitted November 5, 1985, at Detroit.—Decided February 18, 1986. Leave to appeal applied for.

Plaintiff, Diane Davis, in her individual capacity and as administratrix of the estate of Lester Davis, deceased, brought an action in the Wayne Circuit Court against defendant, City of Detroit. The complaint alleged that the decedent hanged himself while in police custody, that the death resulted from the defective condition of the 11th Precinct holding cell where the decedent was detained, and that the police violated the decedent's constitutional rights. Following a trial, the jury returned a verdict in favor of the plaintiff on the defective building claim, but found no constitutional rights violation. The jury's award of $190,000 was reduced by the trial court, James A. Hathaway, J., to $123,500 based on a finding by the jury that the decedent had been 35% negligent in his death. Defendant appeals from the judgment and order entered thereon and from the trial court's further order denying defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial or a *remittitur. Held:*

1. Section 4 of the Department of Corrections act does not explicitly limit the Department of Corrections' jurisdiction to post-conviction correctional facilities.

2. There is no conflict between the city's authority to main-

REFERENCES

Am Jur 2d, Appeal and Error §§ 737, 939 *et seq.,* 978 *et seq.*

Am Jur 2d, Courts § 233.

Am Jur 2d, Death §§ 121 *et seq.*

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 98, 145 *et seq.*

Am Jur 2d, Penal and Correctional Institutions §§ 3 *et seq.,* 17 *et seq.*

Am Jur 2d, Statutes §§ 347 *et seq.*

Prospective or retroactive operation of overruling decision. 10 ALR3d 1371.

Civil liability of sheriff or other officer charged with keeping jail or prison for death or injury of prisoner. 14 ALR2d 353.

See also the annotations in the ALR3d/4th Quick Index under Municipal Corporations; Prisons and Convicts.

tain a jail and detain suspects under the home rule act, MCL 117.4e(1), and the Department of Corrections' supervisory power, contained in § 62 of the Department of Corrections act, prior to its amendment in 1984, to insure that such facilities are maintained in a safe and humane condition.

3. Defendant correctly points out that § 62 of the Department of Corrections act was amended in 1984 to take away the department's supervisory and rule-making power over local detention facilities. The amendment was not remedial and is to be given prospective application only. The jury was properly instructed based on the law as it existed at the time.

4. The trial court did not err in relying on the interpretation given § 62 of the Department of Corrections act in *Young v Ann Arbor,* 119 Mich App 512 (1982). The part of the original opinion in that case dealing with the Department of Corrections' authority over local holding facilities is valid precedent. Retroactive application of *Young* was not error.

5. There was sufficient evidence introduced at trial from which the jury could conclude that the absence of a detoxification cell was a proximate cause of the decedent's death and that such an absence constituted a defect in a public building under the exception to the doctrine of governmental immunity for defective public buildings. The matter was properly submitted to the jury.

6. Plaintiff properly pled the issue of the applicability of the defective public building exception to governmental immunity. The trial court did not abuse its discretion in ruling that defendant failed to raise the issue of the allegedly defective pleading in a timely manner.

7. The Court of Appeals did not agree with defendant's assertion regarding a number of instances where allegedly irrelevant and prejudicial evidence was presented to the jury.

8. The trial court did not abuse its discretion in denying defendant's motion for a new trial or *remittitur.* The amount of the jury's award does not shock the judicial conscience and was not unreasonable. There was no clear error.

Affirmed.

1. PRISONS AND PRISONERS — DEPARTMENT OF CORRECTIONS — JURIS-
DICTION.

A section of the Department of Corrections act concerning the department's jurisdiction grants exclusive jurisdiction to the department over, among other areas, penal institutions; the section is not an express limitation on the supervisory powers of the department but simply provides that no other agency of

the state government can regulate the area (MCL 791.204; MSA 28.2274).

2. CONFLICT OF LAWS — PRISONS AND PRISONERS — HOME RULE ACT — DEPARTMENT OF CORRECTIONS.

There is no conflict between a city's authority to maintain a jail and detain suspects under the home rule act and the Department of Corrections' supervisory power, contained in a section of the Department of Corrections act, to insure that such facilities are maintained in a safe and humane condition (MCL 117.4e[1], 791.262; MSA 5.2078(1), 28.2322).

3. STATUTES — AMENDMENT OF STATUTES — PROSPECTIVITY — DEPARTMENT OF CORRECTIONS.

The 1984 amendment of a section of the Department of Corrections act to take away the Department of Corrections' supervisory and rule-making power over local detention facilities changed existing substantive law and should be limited to prospective application (MCL 791.262; MSA 28.2322).

4. STATUTES — AMENDMENT OF STATUTES — PROSPECTIVITY — RETROACTIVITY.

Statutory amendments generally are applied prospectively only, unless the Legislature expressly or impliedly indicates its intention to give them retroactive effect; amendments may be applied retroactively if they are remedial in nature.

5. STATUTES — AMENDMENT OF STATUTES — REMEDIAL AMENDMENTS — RETROACTIVITY.

A statutory amendment is considered remedial if it relates to remedies or modes of procedure which do not take away vested rights; a statutory amendment that only operates in furtherance of a remedy or a continuation of rights already existing is remedial and can be applied retroactively.

6. APPEAL — PRECEDENT.

That part of an original Court of Appeals decision concerning an issue which was not reconsidered when the Court of Appeals thereafter granted a rehearing solely on another issue is valid precedent.

7. COURTS — DECISIONS — RETROACTIVITY.

The general rule is that court decisions should be given full retroactive effect.

8. GOVERNMENTAL IMMUNITY — DEFECTIVE PUBLIC BUILDINGS.

All governmental agencies are immune from tort liability when they are engaged in the exercise or discharge of a governmen-

tal function; governmental agencies are, however, liable for personal injuries arising out of dangerous or defective conditions in public buildings under their control under an exception to the governmental immunity doctrine; a building may be considered defective either because of improper design, faulty construction or the absence of safety devices, considering the use or purpose that the building serves (MCL 691.1406; MSA 3.996[106]).

9. GOVERNMENTAL IMMUNITY — JAILS OR DETENTION FACILITIES —
DEFECTIVE PUBLIC BUILDINGS.

The operation of a jail or detention facility by the City of Detroit is a governmental function for which the city is generally immune; an exception to the governmental immunity doctrine exists, however, if the jail or detention facility constitutes a defective public building (MCL 691.1406; MSA 3.996[106]).

10. APPEAL — EVIDENCE — GOVERNMENTAL IMMUNITY — DEFECTIVE
PUBLIC BUILDINGS.

The issue of whether the lack of a detoxification cell in a city's detention facility constituted a public building defect sufficient to avoid the defense of governmental immunity was properly submitted to the jury where sufficient evidence was introduced at trial from which the jury could conclude that the absence of such a cell was a proximate cause of the decedent's death and constituted a public building defect (MCL 691.1406; MSA 3.996[106]).

11. APPEAL — MOTIONS AND ORDERS.

A trial court's determination to deny a motion based on a finding that the motion had not been timely made will be upheld on appeal where there was no abuse of the trial court's discretion in denying the motion.

12. APPEAL — EVIDENCE — COURT RULES.

The Court of Appeals may not set aside a verdict because of an error in the admission of evidence unless refusal to take this action appears to the Court to be inconsistent with substantial justice (MCR 2.613[A]).

13. APPEAL — NEW TRIAL — *REMITTITUR.*

The appropriate standard of review of a claim that the trial court abused its discretion in denying a motion for a new trial or *remittitur* is the "shock the judicial conscience" standard.

14. DAMAGES — DEATH OF FAMILY MEMBER — APPEAL.

The determination of what amount would adequately compensate

a party for the loss of society and companionship and pain and suffering due to the death of a close family member should be left to the jury and a reviewing court should not arbitrarily substitute its judgment for that of the factfinder, unless clear error appears in the record.

*Small, Clark & Berris, P.C.* (by *Marvin L. Berris* and *Anne M. Winthrop),* for plaintiff.

*Cooper & Fink* (by *David H. Fink* and *Mark J. Zausmer),* for defendant.

Before: SHEPHERD, P.J., and J. H. GILLIS and P. J. CLULO,* JJ.

SHEPHERD, P.J. Plaintiff, Diane Davis, in her individual capacity and as the personal representative of the estate of Lester Davis, deceased, filed suit in Wayne County Circuit Court on June 21, 1979, against the City of Detroit after the decedent hanged himself while in police custody. The complaint alleged that the decedent's death resulted from the defective condition of the 11th Precinct holding cell where the decedent was detained and that the police violated the decedent's constitutional rights. On January 23, 1984, after a lengthy trial, the jury returned a verdict in favor of the plaintiff on her defective building claim, but found no constitutional rights violation. The jury awarded the plaintiff $190,000 which was reduced to $123,500 based on a finding by the jury that decedent had been 35% negligent in his death. The city appeals as of right. We affirm.

I

On June 22, 1976, at approximately 11:15 a.m., Detroit police responded to a radio call that a

* Circuit judge, sitting on the Court of Appeals by assignment.

burglary was in progress at a house owned by the sister and brother-in-law of the decedent, Lester Davis. Officer Krantz testified that after he arrived at the house he saw the decedent run out of the front door and onto the porch. Police found various items outside the house and arrested the decedent for breaking and entering. After decedent was arrested, he was identified to the police by his niece, Theresa Whitlow, whose parents own the house which the decedent was burglarizing. Officer Krantz testified that Whitlow informed him that the decedent was a "junky" and implored him to place Davis in jail. Krantz admitted that he did not check Davis's arms for needle track marks and he did not pass the information on to other police officers. Krantz also testified that he had previously arrested hundreds of junkies and that he did not notice that decedent had any of the usual signs typical of intravenous drug users.

Decedent was transported to the 11th Precinct for processing and was then placed in a detention cell in the precinct. At about 12:30 p.m., Officer Kovacik made a check of the cellblock area and removed the only other prisoner from his cell to be refingerprinted. When he returned the prisoner, he discovered decedent hanging by his shirt from the crossbars of his cell.

Other police officers who had contact with decedent both immediately after his arrest and at the 11th Precinct testified that they were unaware that decedent was a drug user and that they had not observed any signs of drug use or that decedent needed medical care. Sergeant Yeager, the desk sergeant at the precinct, evaluated decedent on his arrival at the precinct and testified at trial that if decedent had appeared injured, distraught or otherwise in need of medical care he would have been immediately transferred to the hospital.

However, other witnesses testified that there were signs that decedent was a drug addict. Decedent's niece testified that he appeared anxious and was perspiring heavily at the time of his arrest. She further testified that she was familiar with the signs of drug withdrawal and, in her opinion, decedent may have been undergoing withdrawal when arrested. Dwight Smith, the other prisoner in the cellblock, testified that after decedent was put into a cell he started pounding on the walls very loudly, but no police officer responded to the noise. In addition, an officer investigating the death found numerous needle marks on decedent's arms and legs. Although there were no traces of morphine or heroin found in decedent's blood after his death, there were traces of quinine, which is often used to cut heroin but is also present in some soft drinks.

At trial, the defendant objected to the plaintiff's use of the Department of Corrections' Rules for Jails, Lockups and Security Camps as evidence to establish that the holding cells were defective. The city argued that the regulations did not apply to the holding cells at the 11th Precinct. The trial court ruled that plaintiff could use the rules as evidence based on the case of *Young v Ann Arbor,* 119 Mich App 512; 326 NW2d 547 (1982), which held that the department's rules did apply to municipal holding facilities. The plaintiff referred to the rules extensively at trial and the defendant maintained a continuing objection.

The detention facilities at the 11th Precinct consisted of 12 cells, 6 on each side separated by an aisle. The individual cells were constructed of concrete cinderblock on the rear wall and solid steel on the side walls which separate the cells. The front of the cells, including the doorways, were constructed of bars and crossbars. As a result

of the structural design of the cell area, an officer could not see what a person was doing in a cell unless he was standing directly in front of that cell. There was no special cell classified as a detoxification cell for holding drug addicts going through withdrawal as required by the Department of Corrections rules. Nor did the precinct have an electronic monitoring system which would have allowed constant surveillance over the cell area. Keeping detained suspects constituted only a small part of the total activity of the precinct. Typically, a suspect would only be detained at the precinct for a few hours while awaiting arraignment or release.

Frank Donley, the Supervisor for Facilities Inspection for the Department of Corrections, was the primary witness offered by the plaintiff to establish that the 11th Precinct was defective. Donley testified that he inspected the lockup facilites at the 11th Precinct to determine if they were in compliance with the Rules for Jails, Lockups and Security Camps promulgated by the Department of Corrections. He found several instances of noncompliance, including no two-way audio communications system to allow for communication between the cell area and the desk, too few exits in case of emergencies, no detoxification cell, exposed steel plates, and inadequate lighting and cell size. Donley further testified that the department's rules provide for the granting of a variance from the rules, but that none was requested by the city. He also noted that drug addicts were more likely to commit suicide while in police custody and that detoxification cells usually prevent such suicides because of continuous visual observation and their special design. According to Donley, a suspect who is anxious, sweating heavily and has needle marks

on his arms should be put into a detoxifiation cell or sent to a hospital.

II

In *Young v Ann Arbor, supra,* this Court was called upon to interpret MCL 791.262; MSA 28.2322 to determine whether regulations promulgated by the Department of Corrections applied to local penal facilities. Prior to its amendment in 1984, § 62 of the Department of Corrections act provided in relevant part:

"The department shall supervise and inspect local jails and houses of correction for the purpose of obtaining facts in any manner pertaining to the usefulness and proper management of said penal institutions and of promoting proper, efficient and humane administration thereof, and shall promulgate rules and standards with relation thereto; * * *."

The Court in *Young* ruled that the statute applied to a holding facility maintained by the City of Ann Arbor and therefore it was error not to have instructed the jury on the mandatory applicability of supervisory rules that had been promulgated by the department pursuant to its stautory authority. See 1979 AC, R 791.501 through 791.657. The Court stated:

"We conclude that the Legislature intended to give the department the authority to supervise and inspect all local penal institutions, however specifically designated. We hold that the statutory term 'local jail' was meant to encompass any facility operated by a unit of local government for the physical detention of persons charged with or convicted of a criminal offense. This includes, at least, city and county jails and local lock-ups." *Young, supra,* p 517.

The Court further noted that such an interpreta-

tion was only reasonable because, otherwise, persons who are merely detained temporarily while awaiting processing would be afforded less protection than inmates convicted of criminal offenses who are confined in lockups. *Id.,* p 518.

In the present case, the trial court relied heavily on *Young* in resolving many of the issues raised at trial. The court also instructed the jury based on *Young* and indicated that the department had adopted certain regulations pursuant to statutory authority which the jury should consider in determining whether the city was negligent in the maintenance of its lockup. Rule 791.555 required that a jail or lockup have at least one detoxification cell "designed for detention of chemically impaired persons during the detoxification process". In this appeal, defendant argues that the trial court should not have relied on *Young* and makes numerous arguments concerning the proper interpretation of the department's enabling legislation, most of which arguments were rejected in *Young.*

Initially, defendant asserts that in § 4 of the Department of Corrections act, the Legislature explicitly limited the department's jurisdiction to post-conviction correctional facilities. Section 4 grants exclusive jurisdiction to the department over, among other areas, penal institutions. Defendant incorrectly reasons that the grant of jurisdiction contained in § 4 is an express limitation on the supervisory powers of the department, when clearly it is not. The exclusive grant of jurisdiction found in § 4 simply provides that no other agency of the state government can regulate that area. In fact, the statute expressly provided in § 62 that the department shall supervise the operation of local jails.

Nor do we agree with defendant that there is a

conflict between the city's authority to maintain a jail and detain suspects under the home rule act, MCL 117.4e(1); MSA 5.2078(1), and the department's supervisory power, contained in § 62, to insure that such facilities are maintained in a safe and humane condition. Our conclusion is consistent with the holding in *Young* that the department's regulatory authority extended to "any facility operated by a unit of local government for the physical detention of persons charged with or convicted of a criminal offense". 119 Mich App 517.

However, as defendant correctly points out, § 62 was amended in 1984, after *Young* was decided, to take away the department's supervisory and rule-making power over local detention facilities. As amended, the statute now provides in relevant part:

"(4) Except as provided in subsection (3), the department shall not supervise and inspect, or promulgate rules and standards for the administration of, holding cells, holding centers, or lockups. However, the department shall provide advice and services concerning the efficient and humane administration of holding cells, holding centers, and lockups at the request of a local unit of government."

According to defendant, the statutory amendments are remedial and evidence that the Legislature did not ever intend for the department to exercise authority over municipal facilities and, therefore, the amendments should be given retroactive effect to this action. We disagree.

In general, statutory amendments are applied prospectively only, unless the Legislature expressly or impliedly indicates its intention to give them retroactive effect. *Gormley v General Motors Corp,* 125 Mich App 781; 336 NW2d 873 (1983),

*Hughes v Judges' Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979). However, if a statutory amendment is remedial in nature, the amendment may be applied retroactively. *Hansen-Snyder Co v General Motors Corp*, 371 Mich 480; 124 NW2d 286 (1983). An amendment is considered remedial if it relates to remedies or modes of procedure which do not take away vested rights. Statutory amendments that only operate in furtherance of a remedy or a continuation of rights already existing are remedial and can be applied retroactively. *Lambard v Saga Food Service, Inc*, 127 Mich App 262, 273; 338 NW2d 207 (1983), *lv den* 419 Mich 958 (1984).

It is readily apparent that the amendments are not remedial in nature and, in fact, afford less protection for those held in local holding cells and lockups. The amendments changed existing substantive law and should be limited to prospective application. Furthermore, there is no suggestion in the text of the 1984 amendments that the Legislature intended the amendments to apply retroactively. We further note that the amendments to § 62 were adopted several months after the jury rendered a verdict in this case. The jury was instructed based on the law that existed at the time. It would lead to absurd results if a jury verdict could be overturned every time a statute is subsequently amended.

Defendant next argues that the trial court should not have relied on *Young* because an application for leave to appeal from that decision is presently pending and thus the decision has no precedential value. This argument too is without merit.

After *Young* was originally decided, this Court granted a rehearing solely on the issue of whether governmental immunity applied to an individual

defendant in the case. *Young v Ann Arbor (On Rehearing)*, 125 Mich App 459; 336 NW2d 24 (1983). The part of the original opinion concerning the authority of the department over local detention facilities was not reconsidered. Recently, the Supreme Court, in lieu of granting leave to appeal, remanded the case for reconsideration in light of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). *Young v Ann Arbor*, 422 Mich 900; 367 NW2d 333 (1985). Thus, the part of the original opinion dealing with the department's authority over local holding facilities is valid precedent.

We also reject defendant's argument that *Young* should be applied prospectively only because it was decided six years after Davis died. The general rule is that court decisions should be given full retroactive effect. *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979). *Young* was decided two years before trial in this case and did not set forth a new rule of law which took the city by surprise. The rules and regulations applied by the lower court in this case had been adopted by the department approximately one year prior to decedent's death.

## III

Defendant argues that the verdict is contrary to the doctrine of governmental immunity because the operation of a jail is a governmental function. Defendant further argues that the defective public building exception to the governmental immunity doctrine does not apply in this case.

All governmental agencies are immune from tort liability when they are engaged in the exercise or discharge of a governmental function. *Ross, supra*. The operation of a jail or detention facility

by the City of Detroit is a governmental function for which the city is generally immune. *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), *Green v Dep't of Corrections,* 386 Mich 459; 192 NW2d 491 (1971). However, an exception to the governmental immunity doctrine exists if the jail or detention facility constitutes a defective public building. MCL 691.1406; MSA 3.996(106). Governmental agencies, like the City of Detroit, are statutorily liable for personal injuries arising out of dangerous or defective conditions in public buildings under their control. MCL 691.1406; *Ross, supra,* p 591. With the defective public building exception, the Legislature intended to impose a broad duty on the government to maintain safe buildings. *Landry v Detroit,* 143 Mich App 16, 22; 371 NW2d 466 (1985). In *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), the Supreme Court noted that a building may be considered defective either because of improper design, faulty construction or the absence of safety devices, considering the use or purpose that the building serves. *Id.,* pp 730, 732.

In the present case, plaintiff argued at trial that Lester Davis would not have been able to commit suicide if he had not been placed in a defective detention facility which failed to meet the standards required for lockups promulgated by the Department of Corrections.

However, defendant asserts that any negligence stems not from a defective condition in the holding cell, but, rather, from the alleged failure of the defendant's agents to properly supervise the activities conducted within the cell. According to the defendant, the holding area where Lester Davis was confined was being used precisely as intended and the plaintiff's claim against the city is based on the officers' alleged negligent failure to diag-

nose Lester as a narcotics addict in need of special care. Thus, defendant argues that because the plaintiff's claims relate to negligent diagnosis, the public building defect exception to the doctrine of governmental immunity does not apply in this case. Defendant argued at oral argument that the evidence indicates that, even if there had been a detoxification cell, the decedent would not have been put in it and, therefore, its nonconformance with the rules cannot be said to be the proximate cause of decedent's death.

We disagree and conclude that there was enough evidence from which the jury could have found that, had there been a detoxification cell, decedent would have been put in it. In light of the evidence tending to show that decedent was under the influence of drugs or undergoing withdrawal at the time of his arrest, the jury could have disbelieved testimony by police officers that they observed no signs of drug use. There was sufficient evidence introduced at trial from which the jury could conclude that the absence of a detoxification cell was a proximate cause of decedent's death and constituted a building defect. In *Lowery v Dep't of Corrections,* 146 Mich App 342; 380 NW2d 99 (1985), we held that a complaint that merely alleges injuries committed by prison personnel or inmates does not avoid the defense of governmental immunity. However, we said in *Lowery:*

"With respect to allegations regarding the lack of a padded cell and an inadequate physical structure, it is clear that plaintiff's injuries did not arise from such alleged defects, but from the assaults allegedly inflicted by unknown guards and inmates. Accordingly, we believe that summary judgment was properly granted on this claim." 146 Mich App 358.

In this case we had evidence that the lack of a

detoxification cell did result in the injuries and, therefore, the matter was properly submitted to the jury.

Defendant further asserts that the issue of whether a building defect existed should not have been submitted to the jury because the plaintiff failed to plead facts in avoidance of governmental immunity in her complaint. As defendant points out, we have previously held that to sufficiently plead the issue of the applicability of the public building defect exception to governmental immunity, the plaintiff must make specific allegations of the defect and cite the statutory exception in the complaint. *Mosqueda v Macomb County Youth Home,* 132 Mich App 462, 470; 349 NW2d 185 (1984). In this case, however, the defendant failed to raise the issue in a timely manner. Defendant did not suggest that the plaintiff's complaint was defective in any manner until the second day of trial. The trial court denied the defendant's motion in that regard, finding that it had not been timely made. We find no abuse of discretion in the court's ruling. The complaint alleged a duty to "maintain a proper, safe and undefective *[sic]* premises * * *". If the defendant thought that this allegation in the complaint was insufficient to establish an exception to governmental immunity, the issue should have been raised prior to trial in a motion for summary disposition. We are satisfied that the above-quoted language from the complaint satisfies the minimal requirements of notice pleading.

## IV

The defendant next raises a number of instances where allegedly irrelevant and prejudicial evidence was presented to the jury. First, defendant

asserts that error occurred when the plaintiff was permitted to cross-examine numerous police officers concerning a Department of Corrections rule booklet for the maintenance of lockups. Plaintiff used the booklet, entitled Rules for Jails, Lockups and Security Camps, to establish that the cell was defective. The witnesses indicated that they had never heard of the booklet before and were unfamiliar with the rules it contained as they applied to the maintenance of the 11th Precinct lockup. Following this testimony, the plaintiff sought to have the booklet admitted into evidence. The trial court, based on an objection by the defendant, ruled that only those portions of the booklet which related to lockups and were directly applicable to the case could be admitted and shown to the jury. However, on appeal, defendant argues that the court's exclusion of the irrelevant rules was ineffective and its case was prejudiced because the cross-examination gave the jury the impression that the city had disregarded each and every mandate of the Department of Corrections. We disagree. Only the relevant portions of the booklet were admitted into evidence and shown to the jury. The actual contents of the booklet were not made known to the jury prior to its admission and the irrelevant portions were properly excised by the court in response to the defendant's objection. Defendant was not prejudiced merely because the booklet was initially displayed to the various witnesses.

The defendant next argues that testimony suggesting that the police may have brutalized Lester Davis prior to his death was irrelevant and should not have been admitted. We find no reversible error. MCR 2.613(A). Suggestions by the plaintiff's counsel that Davis may have been brutalized by the police were of a very limited nature, given the

length of the trial. In addition, the medical examiner conclusively testified that he saw no evidence which would support the suggestion that Lester Davis had been subjected to any type of police brutality prior to his death. Thus, any suggestion that Davis may have been brutalized by the police was countered by the medical examiner's testimony. The record clearly reveals that when the plaintiff entered into areas that the trial court felt were inappropriate, plaintiff was prevented from making further inquiry. Given the extent of the testimony and the conduct of the court, defendant's claim of prejudice is without merit.

Finally, defendant argues that the accumulation of other prejudicial testimony warrants reversal. Much of this testimony was relevant either to establish plaintiff's claims or prove damages. Defendant has not explained in its brief in what manner the other testimony resulted in prejudicial error. This Court may not set aside a verdict because of an error in the admission of evidence "unless refusal to take this action appears to the court inconsistent with substantial justice". MCR 2.613(A). We find no reversible error.

## V

Defendant asserts that the jury award of $123,-500 (after the 35% reduction for decedent's comparative negligence) rendered in this case was excessive and influenced by passion or prejudice and that the trial court abused its discretion in denying its motion for a new trial or *remittitur*. In *May v Grosse Pointe Park*, 122 Mich App 295; 332 NW2d 411 (1982), this Court stated that the appropriate standard of review for such a claim is the "shock the judicial conscience" standard. If the amount of the award does not shock the judicial

conscience, the trial court has not abused its discretion in denying the motion for a new trial or *remittitur. Id.,* p 297. See also *Jones v Sanilac County Road Comm,* 128 Mich App 569, 592; 342 NW2d 532 (1983), *lv den* 419 Mich 936 (1984).

There is no exact mathematical formula which would allow a jury or court to precisely determine what amount would adequately compensate a party for the loss of society and companionship and pain and suffering due to the death of a close family member. As a result, it is generally recognized that such determinations should be left to the jury and a reviewing court should not arbitrarily substitute its judgment for that of the factfinder, unless clear error appears in the record. *May, supra,* p 298.

Plaintiff provided evidence of her loss of society and companionship, as well as decedent's pain and suffering. We conclude that the jury's award of $123,500 for the plaintiff's loss of society and companionship with her husband and decedent's pain and suffering was not unreasonable and cannot be said to shock the judicial conscience.

Affirmed.