WADE v DEPARTMENT OF CORRECTIONS

Docket No. 113501. Submitted November 22, 1989, at Lansing. Decided March 5, 1990. Leave to appeal applied for.

Gerald Wade, an inmate of the Department of Corrections Coldwater facility, slipped and fell on some grease or other substance and injured himself. He brought an action against the Department of Corrections in the Court of Claims, alleging that the accumulation of the substance plaintiff slipped on was a dangerous condition of which the department had knowledge and allowed to exist. Defendant moved for summary disposition based on governmental immunity, failure to state a claim and lack of a genuine issue of material fact. The court, Michael G. Harrison, J., granted summary disposition based on governmental immunity, expressly declining to address whether there was or was not a genuine issue of material fact. Plaintiff appealed.

The Court of Appeals *held*:

Plaintiff's claim is sufficient to withstand a motion for summary disposition based on governmental immunity and failure to state a claim.

Reversed and remanded.

MacKENZIE, J., dissented. She would hold that the scope of the defective building exception to governmental immunity is confined to preserving the structural integrity of public buildings by keeping them in repair and does not extend to negligent janitorial care. She would affirm.

GOVERNMENTAL IMMUNITY — DEFECTIVE BUILDING EXCEPTION — ACCUMULATION OF OIL AND GREASE.

Accumulation of oil and grease on the floors in a public building may constitute a dangerous condition sufficient to fall within the defective building exception to governmental immunity (MCL 691.1406; MSA 3.996[106]).

*James T. Miller,* for plaintiff.

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability § 304; Penal and Correctional Institutions § 181.

See the Index to Annotations under Floors; Governmental Immunity or Privilege; Prisons and Prisoners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Rose A. Houk,* Assistant Attorney General, for defendant.

Before: MURPHY, P.J., and MACKENZIE and CAVANAGH, JJ.

MURPHY, P.J. Plaintiff appeals as of right from an order of the trial court granting defendant's motion for summary disposition. We reverse and remand for further proceedings.

Plaintiff, a resident of the Michigan Department of Corrections Coldwater facility, filed a complaint against defendant after he fell on some grease or other substance as he was walking from the facility mess hall. Plaintiff suffered a severe fracture of the right patella.

Plaintiff's complaint alleged that defendant had a statutory duty pursuant to MCL 691.1406; MSA 3.996(106) to maintain the facility so as to avoid defective and dangerous conditions which could result in bodily injury. The dangerous condition of which plaintiff alleged defendant had knowledge and which defendant allowed to exist was "an accumulation of grease, oil, water, food or other slippery matter in the corridor from the messhall [sic] to Unit No. C-29 of said premises."

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), governmental immunity, as well as (C)(8), failing to state a claim, and (C)(10), no genuine issue of material fact. The lower court, after enunciating the applicable standard for a (C)(8) motion, appeared to decide the motion in defendant's favor on the basis of MCR 2.116(C)(7). Nonetheless, it is clear that the lower court did not decide the matter on the basis of MCR 2.116(C)(10). In dismissing plaintiff's complaint, the trial court stated:

The Court considers this motion under the—exclusive of the (10) aspects of this—considers the motion in light of the pleadings alone. The Court reviews only the pleadings. The motion is to be considered in the light most favorable to the nonmoving party. It is the responsibility and requirement that the plaintiff allege avoidance of immunity. The statutory basis is obvious, the building defect, but there has to be a defect in the building itself. Now, a mere accumulation, as has been stated here, accumulation, in paragraph 10 of the complaint, of grease, oil, water, food, or slippery matter in no way alleges a defect. It didn't say what was defective. And the Court is satisfied that under those circumstances the motion should be granted, and the Court will grant the motion.

I do not reach the (C)(10) motion because I don't think it's necessary—that aspect of the motion because I don't think it's necessary for purposes of this determination today.

We note that defendant argued below that *Reardon v Dep't of Mental Health,* 430 Mich 398; 424 NW2d 248 (1988), mandated the dismissal of plaintiff's complaint. Now, on appeal, plaintiff essentially argues that the trial court should have applied the public building exception to governmental immunity to this case because an accumulation of oil or grease on a floor constitutes a dangerous and defective condition of a public building. We agree.

In *Reardon,* our Supreme Court attempted to clarify the parameters of the statutory building exception to governmental immunity by stating the following:

In light of the circumstances surrounding the enactment of this legislation [the governmental immunity act], we are persuaded that the Legislature did not intend an expansive reading of the public building exception. Instead, we conclude

that the Legislature intended that the exception apply to facts similar to the facts of *Williams* [*Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961)]—the case which precipitated the statute in the first place. In other words, an injury arising out of a dangerous or defective physical condition of the building itself.

This conclusion is buttressed by the language chosen by the Legislature in enacting the public building exception. *The first sentence imposes upon governmental agencies the duty to "repair and maintain public buildings under their control . . . ."* In *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), we held that this duty is not strictly limited to the repair or maintenance of public buildings. Instead, we held that "a building may be dangerous or defective because of improper design, faulty construction or the absence of safety devices." *Id.* at 730. We reiterate this proposition, as the holding in *Bush* is entirely consistent with today's conclusion that the injury must be occasioned by the dangerous or defective physical condition of the building itself. As long as the danger of injury is presented by a physical condition of the building, it little matters that the condition arose because of improper design, faulty construction, or absence of safety devices. *However, while the public building exception is not strictly limited to failures of repair or maintenance, the Legislature's choice of those terms to define the governmental duty is indicative of its intention regarding the scope of the exception. The duty to repair and maintain a premises clearly relates to the physical condition of the premises.*

In addition, the second sentence of the exception imposes liability on governmental agencies for injuries "resulting from a dangerous or defective condition *of* a public building . . . ." (Emphasis supplied.) [*Reardon, supra,* pp 409-410.]

*In summary, the Legislature intended to impose a duty to maintain safe public buildings, but not necessarily safety in public buildings. In both*

cases, the assaults were the result of the act of an intervening party rather than a dangerous or defective condition of the building itself. Therefore, we conclude that the public building exception does not apply under the facts of these cases. [*Reardon, supra,* p 417. Emphasis added.]

Since situations "similar to the facts in *Williams*" fall within the building exception, a closer look at *Williams* is necessary. In *Williams,* the City of Detroit owned a building which had not been rented or leased for some years. It is possible to surmise that the building was used for storage.

In any event, on the day of the incident, the city was abandoning the use of the building and removing furniture. Plaintiff's decedent was employed by a moving firm which had been hired by the city.

Employed in connection therewith was an elevator which *plaintiff claims was not properly safeguarded and maintained.* The decedent was assisting in carrying a desk into said elevator at the 6th floor level of the building and was walking backward. He was proceeding toward an opening in the elevator which was not guarded or protected in any way, as it is claimed. There was a space between the elevator floor and the side of the shaft approximately 30 inches in width. Mr. Williams fell from the elevator floor down this shaft and was killed. Suit was brought on the theory that defendant city and the individual defendants were guilty of negligence constituting the proximate cause of the death. [*Williams, supra,* p 233. Emphasis added.]

Since *Williams* stands as the touchstone in determining whether the building exception applies to a particular fact situation, we must evaluate the facts of this case against that standard.

In *Williams,* there was a dangerous condition in

the building's elevator system. In this case, there was a dangerous condition in that the floor of the public building was too slippery to walk on safely. Again, we note that the Supreme Court in *Reardon* emphasized that the duty to repair and maintain the premises clearly relates to the physical condition of the premises. We believe that it is axiomatic that the physical condition of the premises of a public building includes the physical condition of the building's floor.

In *Ray v Dep't of Social Services,* 156 Mich App 55; 401 NW2d 307 (1986), lv den 428 Mich 891 (1987), this Court held that dirty floors, caused by trash, spilled drinks, and water from a leaking roof, constituted a dangerous condition falling within the public building exception to governmental immunity. *Ray, supra,* p 64. Although decided before *Reardon,* we believe that *Ray* remains good law and was not affected by *Reardon.* In both *Ray* and the case at bar, there was a dangerous physical condition of the building itself.

We recognize that, while *Reardon* set forth certain limitations on the scope of the public building exception, we must stress that the Supreme Court nonetheless was focusing on factual situations which were totally different from the facts in the case at bar. In both cases decided in *Reardon,* there was an intervening third party who assaulted the victim in a public building. The assaults rather than anything related to the public building, were held to be the causes of the victims' injuries. In this case, however, there is no intervening third party which caused plaintiff's injuries. Rather, plaintiff fell because of an oil or grease accumulation which covered the floor and, for all intents and purposes, the grease became the surface upon which plaintiff walked. Simply, the

condition of the floor was a physical condition of the building itself.

Nevertheless, we can envision that a strict reading of *Reardon* might suggest that the facts of this case are not within the building exception because the dangerous condition was not part of the building itself. However, we reject any such interpretation. For example, few would argue that a broken tile or a hole in the floor of a public building would not constitute a physical condition of the building itself. We see little, if any, rational distinction between the dangerous physical condition which is caused by a hole or a broken tile in a floor and a floor covered with an accumulation of oil or grease. The result is the same. Both situations involve a risk of injury to the public because of the physical condition of the premises.

If *Reardon* stands for the proposition that the building exception applies in the case of the broken tile because that is a dangerous and defective condition *of* the building itself, and the building exception does not apply to the case of the grease or oil accumulation, because the oil is not part of the building itself, the Supreme Court has set forth a test which fails to reflect the true purpose of the building exception to governmental immunity. The government clearly has a statutory duty to *maintain* its public buildings so that the members of the public who are on public premises are protected from dangerous and defective conditions of the building.

In light of the foregoing, we conclude that plaintiff's claim is one which survives a motion for summary disposition on the grounds of immunity granted by law, MCR 2.116(C)(7). We also believe that plaintiff has alleged sufficient facts which state a claim upon which relief can be granted. MCR 2.116(C)(8). We do note, however, that plain-

tiff's complaint has not been tested by the lower court through application of a motion for summary disposition pursuant to MCR 2.116(C)(10), no genuine issue of material fact. Since the lower court clearly avoided any discussion of a motion on such basis, that matter is not before us on appeal.

In conclusion, we believe that plaintiff's complaint set forth a factual situation which falls within the existing parameters of the public building exception to governmental immunity. Moreover, plaintiff's complaint stated a claim upon which relief can be granted. Therefore, we reverse the lower court's order granting defendant's motion for summary disposition and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

CAVANAGH, J., concurred.

MacKENZIE, J. (dissenting). I disagree with the majority's conclusion that this case comes within the defective building exception to governmental immunity, MCL 691.1406; MSA 3.996(106).

MCL 691.1406; MSA 3.996(106) provides in part:

Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place. As a condition to any recovery for injuries sustained by reason of any dangerous or defective public building, the injured person, within 120 days from the time the injury occurred, shall serve a notice on the responsible governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.

It is clear from a reading of the statute that its scope is confined to preserving the structural integrity of public buildings by keeping them in repair.

In this case, there was nothing about the building itself that was defective. The foreign substance on the floor was not part of the building. Compare *Velmer v Baraga Area Schools,* 430 Mich 385; 424 NW2d 770 (1988). There is no indication that the substance was on the floor due to a structural flaw such as a leaking pipe. Compare *Ray v Dep't of Social Services,* 156 Mich App 55; 401 NW2d 307 (1986), lv den 428 Mich 891 (1987). There is no allegation that the foreign substance accumulated due to a defectively designed floor or a floor constructed with unsafe materials. Compare *Davis v Detroit,* 149 Mich App 249; 386 NW2d 169 (1986). In short, plaintiff has alleged nothing more than negligent janitorial care. That is not enough to bring this case within the public building exception to governmental immunity. Accordingly, I would affirm.